Richard Lee BAXTER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 385S77.

Supreme Court of Indiana.

April 25, 1988.

Dennis D. Graft, Robert C. Way, Kendallville, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Richard Lee Baxter was accused of sexually abusing his two step- daughters, S.W. and A.W. A jury found him guilty of two counts of child molesting, a class B felony, Ind.Code § 35–42–4–3 (Burns 1985 Repl.), and two counts of incest, a class D felony, Ind.Code § 35–46–1–3 (Burns 1985 Repl.). It also determined that he was an habitual offender, Ind.Code § 35–50–2–8 (Burns 1985 Repl.).

The trial court sentenced Baxter to concurrent terms of twenty years on each count of child molesting and four years on each count of incest. Because Baxter's prior felony convictions were more than ten years old, the trial court enhanced his sentence as a result of the habitual offender finding by only five years, rather than the maximum thirty. Ind.Code § 35–50–2–8(e).

Baxter raises four issues on direct appeal:

1) Whether the evidence is sufficient to support the convictions;

2) Whether the trial court properly denied his motions for continuance of the trial and of the habitual offender proceeding;

3) Whether the trial court erred in excluding Baxter's alibi testimony because of a defective notice of alibi;

4) Whether the trial court erred by admitting evidence of uncharged criminal acts, and

5) Whether the victims were competent to testify.

## I. Sufficiency of the Evidence

Baxter claims the evidence is insufficient to support his four felony convictions and the habitual offender finding. When reviewing such a claim, this Court will not reweigh the evidence or judge the credibility of the witnesses. Looking to the evidence and reasonable inferences therefrom which support the verdict, we will affirm the convictions if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Coleman v. State* (1986), Ind., 490 N.E.2d 325.

The evidence at trial showed that Baxter had sexually abused his stepdaughters for several years before he was charged. The victims testified that he had sexual intercourse with them and required them to perform oral sex several times monthly during the year before trial. The girls reported the molestations to other family members, who confronted Baxter but did not report to authorities until shortly before he was charged. The victims revealed the attacks charged in graphic language during discussions with their social worker.

■ Baxter appears to contend that this Court for various reasons should not consider the testimony of the victims, the social worker or the relatives. Baxter first argues that the testimony of the social worker and the victims' relatives was based on hearsay. Each of those witnesses recounted statements made by the victims. The victims testified and were cross-examined at trial; therefore, their out-of-court statements, related by other witnesses, were admissible. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.

■ Baxter also concludes that the testimony of S.W. should not be considered because her mother held her hand throughout S.W.'s testimony. Without elaborating, he claims that such conduct prejudiced the jury against him. The trial court had discretion to allow special measures aimed at putting the young child at ease on the witness stand. *See Ricketts v. State* (1986), Ind., 498 N.E.2d 1222. We fail to see how Baxter was unduly prejudiced, particularly considering that the victims' mother testified and denied the sexual abuse.

■ Baxter finally argues that the testimony of both victims should not be considered because it was inconsistent, improbable and the product of ill will. The victims' testimony, while sometimes lacking specificity, was generally clear. Their testimony was generally consistent with earlier statements which they gave to their social worker and to relatives. Convictions for incest and child molesting may rest upon the uncorroborated testimony of the victim. *Snider v. State* (1980), 274 Ind. 401, 412 N.E.2d 230. Thus, the evidence was sufficient to support the convictions for child molesting and incest.

■ With regard to the habitual offender finding, Baxter alleges that the State did not adequately prove that he was the same Richard Lee Baxter who, according to certified court records, was convicted of two felonies in the 1960s. While certified copies of judgments or commitments containing the same or similar name as the defendant may be introduced to prove the commission of prior felonies, there must be other supporting evidence to identify defendant as the same person named in the documents. This proof of identity may be in the form of circumstantial evidence. A sufficient connection between the documents and the defendant is made if the evidence yields logical and reasonable inferences from which the trier of fact may determine it was indeed the defendant who was convicted of the two felonies alleged. *Coker v. State* (1983), Ind., 455 N.E.2d 319.

The certified court documents introduced by the State showed a Richard Lee Baxter, born April 4, 1945, was convicted of assault and battery with intent to commit a felony in 1965 and forgery in 1968. Baxter admitted the forgery conviction but denied the other. However, Baxter's mother testified that he was born April 4, 1945, and that he was living with her at the time of both convictions. While Baxter's mother conceded that she did not appear at those court proceedings, she testified that she believed he had been convicted of assault and battery with intent to commit a felony and that she had discussed that case with her son. Such evidence was sufficient to identify Baxter as the person who was convicted of that crime.

## II. Continuance

Baxter claims that the trial court erred when it refused to grant defense counsel's motions for continuance to allow more time to prepare for trial. Counsel entered his appearance on Baxter's behalf on April 25, and a trial date of August 7 was set. On July 5, the court, in response to a defense motion, authorized the defense within the next twenty days to take the depositions of the victims and three of their relatives. On July 23, defense counsel filed his first motion for continuance, indicating that he needed more time to prepare for trial because: (1) he had not been able to schedule any of the depositions or procure the information crucial to presentation of Baxter's alibi; (2) he could meet with Baxter only on weekends because of Baxter's employment, and (3) counsel had several court commitments in the following two weeks. Denying the motion, the trial court noted that the only discovery left uncompleted was the depositions, inasmuch as the court already had denied defendant's notice of alibi.

Defense counsel filed another motion for continuance on July 26. He alleged that the only date possible for depositions was August 1 and that the only court reporting service available on that date did not use tape recorders. Thus, counsel could not be able to review the depositions until they were transcribed. Counsel also repeated his claim of a hectic trial schedule. Although the trial court denied the motion, it postponed one of counsel's hearings in another case to reduce his court commitments, offered the courtroom facilities for taping of the depositions, and appointed defense counsel's law partner as co-counsel in Baxter's case.

Continuances to allow for preparation generally are not favored without a showing of good cause and will be granted only in the furtherance of justice. The trial court must decide whether good cause has been shown, and its ruling will be disturbed only if there is a clear showing of an abuse of discretion. In determining whether good cause exists, the trial court may review the circumstances of the case, as well as the allegations of the motion. *Bryan v. State* (1982), Ind., 438 N.E.2d 709. A continuance sought on non-statutory grounds is within the discretion of the trial court and will not be disturbed absent a clear showing of an abuse of that discretion. *Parr v. State* (1987), Ind., 504 N.E.2d 1014.

The trial court in this case accurately concluded that good cause had not been established. Counsel had nearly four months to prepare for trial. Although counsel waited until the week before trial to schedule depositions of the State's witnesses, the trial court, by allowing use of its own facilities, ensured that counsel would be able to review the depositions immediately after they were taken. Moreover, the appointment of co-counsel insured that preparation for Baxter's trial could proceed, despite defense counsel's allegedly hectic schedule.

Baxter also claims error from the trial court's denial of a continuance of the habitual offender proceeding. Noting that the information was amended to include the habitual offender count three days before trial, Baxter claims he had inadequate time to prepare a defense to that allegation.

The addition of an habitual offender charge is permissible at any time so long as it does not prejudice the substantial

rights of the defendant. A showing of such prejudice is required before a motion for continuance must be granted. *Russell v. State* (1986), Ind., 487 N.E.2d 136.

█ Baxter received notice of the two prior convictions through discovery provided by the State in June 1984. The State was unable to obtain certified copies of those convictions until August 1, but immediately thereafter drafted a letter to defense counsel indicating that it would use those documents at trial. The State proceeded to file the habitual offender count two days later. The trial court concluded that Baxter was on notice as early as June that the State might amend the information to include an habitual offender count. We need not evaluate that conclusion, however, because Baxter has failed to show he was prejudiced by the late filing. He has not indicated what specific evidence or defense he could have obtained, given additional time to prepare to defend against the habitual offender charge. Thus, his claim must fail.

### III. Refusal of Alibi Evidence

Baxter filed a Request for Leave to File Notice of Alibi on June 13, 1984, alleging that he was driving a truck in Pennsylvania on the date of the two charged crimes. The trial court denied the request because the notice of alibi was both tardy and incomplete. Baxter subsequently sought reconsideration of the ruling. The trial court remained steadfast, refusing to allow admission of any alibi evidence, including Baxter's own testimony about his whereabouts on the day of those crimes.

Baxter argues that the trial court's refusal of his notice of alibi deprived him of a fair trial. He contends that the delay in filing the notice and the lack of specificity in it was caused by his inability to procure his driving log from his former trucking company. Baxter asserts that the log was the only document which revealed his exact location on the date at issue.

Presentation of an alibi defense is governed by Ind.Code § 35-36-4-1, which provides in relevant part:

Whenever a defendant in a criminal case intends to offer in his defense evidence of alibi, the defendant shall, *no later than:*

(1) Twenty [20] days prior to the omnibus date if the defendant is charged with a felony ...

file with the court and serve upon the prosecuting attorney a written statement of his intention to offer such a defense. The notice must include *specific information* concerning the *exact place* where the defendant claims to have been on the date stated in the indictment or information. (emphasis added)

Baxter filed his notice of alibi on June 13, 1984, one day before the omnibus date and consequently nineteen days late. Under these circumstances, the trial court had the discretion to allow a tardy notice of alibi only if good cause existed. *Hartman v. State* (1978), 176 Ind.App. 375, 376 N.E.2d 100. The defendant has the burden of showing the existence of good cause. *Stapp v. State* (1972), 259 Ind. 330, 287 N.E.2d 252 (interpreting similar section in previous alibi statute).

█ Baxter contends that he had inadequate time to procure the driving log. Although the charges were filed April 6, 1984, Baxter argues that he was in jail until May 14, 1984 and that he was immediately hospitalized for a short time. Following his release from the hospital, Baxter and his wife separated, and Baxter contends that he subsequently had to focus on finding lodging and employment. In addition, trial counsel was out of town for a week during that period.

None of Baxter's explanations constitutes just cause for the delay. Neither Baxter nor his counsel made any effort to acquire the records until nearly two months after his arraignment. Although counsel realized no later than June 13 that the records could be obtained only through subpoena, such was not sought until the motion to reconsider was filed on July 5. Indeed, the record on appeal does not indicate that Baxter ever acquired the records.

█ Besides being tardy, Baxter's statement that he was in Pennsylvania was

too general to meet the requirements of Ind.Code § 35–36–4–1. *See Graham v. State* (1984), Ind., 464 N.E.2d 1 (appellant's statement that he was in Indianapolis at the time of the crime inadequate for notice of alibi); *Ridgeway v. State* (1981), Ind. App., 422 N.E.2d 410 (notice defective which merely stated that defendant was at his home in Kokomo, "among other places"). The trial court did not abuse its discretion under the statute by refusing the notice of alibi.

Baxter further claims that the trial court violated the Fifth, Sixth and Fourteenth Amendments by refusing to allow him to testify on his own behalf regarding his alibi, despite his inadequate notice. Ind. Code § 35–36–4–3(b) provides:

> If at the trial it appears that the defendant has failed to file and serve an original statement of alibi in accordance with section 1 [35–36–4–1] of this chapter, and if the defendant does not show good cause for his failure, then the court shall exclude evidence offered by the defendant to establish an alibi.

We have held that a trial court may exclude a defendant's alibi testimony under this statute. *Lake v. State* (1971), 257 Ind. 264, 274 N.E.2d 249. *See also Hartman v. State* (1978), 176 Ind.App. 375, 376 N.E.2d 100.

Baxter notes that some states and some federal courts have concluded that alibi notice statutes cannot bar a defendant's testimony. These decisions rest in part on the conclusion that a defendant has a constitutional right to testify, although the United States Supreme Court has never expressly so held. Some believe the Court has not been compelled to address that issue directly because every United States jurisdiction has abrogated by statute the common law incompetency of criminal defendants. *See, e.g., Alicea v. Gagnon,* 675 F.2d 913, 920 (7th Cir.1982). Nonetheless, the Seventh Circuit in *Alicea* relied on a series of U.S. Supreme Court cases in recognizing an accused's right to testify under the Fifth, Sixth, and Fourteenth amendments. *Id.* at 920–923, citing cases such as *In re Oliver,* 333 U.S. 257, 273, 68

S.Ct. 499, 507, 92 L.Ed. 682, 694 (1948) (certain rights basic to our system of jurisprudence include "as a minimum, a right to ... offer testimony ..."); *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1, 4 (1971) ("[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so"); *Brooks v. Tennessee,* 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358, 364 (1972) ("[w]hether the defendant is to testify is an important tactical decision as well as a matter of constitutional right"); *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562, 572 n. 15 (1975) (defendant's right to testify in his own behalf is one of several constitutional rights "essential to due process of law in a fair adversary process").

This Court has implied in *dicta* that criminal defendants have a right to testify under the Sixth and Fourteenth Amendments. *Pigg v. State* (1969), 253 Ind. 329, 253 N.E. 2d 266. In his concurring opinion in *Bowen v. State* (1975), 263 Ind. 558, 568, 334 N.E. 2d 691, 697, Justice DeBruler expressly stated that the accused's right to testify is guaranteed by the Sixth Amendment and Art. 1, § 13 of the Indiana Constitution. In light of all of these cases, we accept Baxter's claim that his right to testify is constitutionally based.

Baxter contends the procedural limitations which the alibi statute places on that right are unconstitutional. States determine what evidence is admissible in their courts, and the only restriction is whether the evidentiary rules violate the federal constitution. The state may not deny a criminal defendant the right to a fair opportunity to defend against the state's accusations. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The defendant's right to present evidence is not absolute, however, for it may bow to accommodate other legitimate interests in the criminal trial process. *McMorris v. Israel,* 643 F.2d 458 (7th Cir. 1981), *cert. denied,* 455 U.S. 967, 102 S.Ct. 1479, 71 L.Ed.2d 684 (1982).

Several legitimate state objectives are furthered by alibi statutes:

First and foremost, by requiring the accused to reveal his alibi defense in advance, the element of surprise is greatly reduced and the fairness of the adversary system thereby enhanced. Second, the likelihood of government investigation following advance notice discourages defendants from fabricating alibis, a deterrent that is lost when alibis can be introduced without warning during the trial. Finally, notice rules promote the orderly administration of justice by preventing unnecessary continuances and by eliminating trials in those instances where post-notice investigation reveals an alibi's merits.

*Alicea v. Gagnon,* 675 F.2d at 916–17 (citations omitted).

The purpose of the Indiana alibi statute is not to compel the exclusion of evidence or mandate retrials for purely technical errors. *Williams v. State* (1980), 273 Ind. 547, 406 N.E.2d 241. The sanction for noncompliance by the defendant is designed to protect the State from fabrication of defenses and enable prosecutors to prepare adequately for trial. *Riggs v. State* (1978), 268 Ind. 453, 376 N.E.2d 483. This interest was recognized by the U.S. Supreme Court in *Williams v. Florida,* 399 U.S. 78, 81, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446, 450 (1970). "Given the ease with which an alibi can be fabricated the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate."[1]

▇▇▇ Determining whether the defendant's right to testify must overcome the State's interests is necessarily fact sensitive. The trial court should, of course, consider the acts of the accused and defense counsel which produced the procedurally inadequate alibi. The effects of allowing the alibi evidence is pertinent, because the objective of the alibi statute is prevention of fabrication and surprise, not punishment of the accused for technical errors. Where the defendant or defense counsel files a tardy or inadequate notice of alibi simply because neither has aggressively

pursued that defense and their failure does not deprive the State of sufficient time and information to investigate and respond, the Constitution would seem to require the allowance of at least the defendant's testimony. However, where the defendant purposely suppresses alibi evidence to gain some advantage in the prosecution, preclusion of his testimony may be appropriate. *See Taylor v. Illinois,* —— U.S. ——, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Alicea v. Gagnon,* 675 F.2d at 925.

In the present case, Baxter and his counsel clearly were dilatory in their efforts to mount an alibi defense. Quite aside from Baxter's tardiness in offering the alibi, he provided the trial court and the prosecution with the defendant's bare assertion that he was somewhere in Pennsylvania on the date of two of the alleged crimes. It would have been a simple matter to subpoena the driving log for use at trial, but the record does not reveal any such attempt by Baxter. At trial, Baxter made no offer to prove with regard to his alibi testimony. Indeed, he has failed to substantiate his alleged alibi by any means, even at this late date. Under these circumstances, the risk of fabrication was considerable.

▇▇▇ Moreover, the State's opportunity to investigate or rebut such a vague alibi was minimal, particularly in light of the victims' inability to specify the exact date of the attacks. Although time normally is not of the essence in proving a criminal offense, the raising of an alibi defense by the defendant requires specific proof of the time of the offense. *Aikens v. State* (1972), 154 Ind.App. 36, 289 N.E.2d 152. Baxter failed to substantiate or more particularly specify his alibi in the nearly four months prior to trial, though he had the ability to do so.

"The adversary system of trial ... is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." *Williams v. Florida,* 399 U.S. at 82, 90 S.Ct. at 1896, 26 L.Ed.2d at 450. Baxter has failed to establish that his

---

1. Of course, the alibi statutes also are beneficial to the defendant because they place reciprocal discovery duties on the State. Thus, the defendant is fully aware of the evidence which the State intends to produce to rebut the alibi.

right to testify outweighed the legitimate interests protected by the alibi notice requirement. The trial court properly excluded Baxter's alibi testimony.

### IV. Uncharged Criminal Acts

Appended to the alibi claims is Baxter's argument that the trial court improperly allowed evidence of uncharged sexual abuse. Certain exceptions exist to the rule that evidence of prior sex crimes is generally inadmissible to prove the crime charged. For instance, the depraved sexual instinct exception allows evidence of prior sex crimes to be admitted in a prosecution for sodomy, incest or child molesting. *Reichard v. State* (1987), Ind., 510 N.E.2d 163. Under that exception, evidence of prior acts of child molesting and incest, even when not reduced to convictions, has been held relevant and probative. *Knisley v. State* (1985), Ind.App., 474 N.E.2d 513. In this case, evidence of uncharged sex crimes which Baxter perpetrated on the victims was relevant to establish his depraved sexual instinct.

### V. Competency of Victims

Baxter claims the trial court should not have allowed the victims to testify because they were not competent witnesses. At the time of trial, S.W. was nine years old and A.W. was eight. Children under ten years of age are incompetent to testify "unless it appears that they understand the nature and obligation of an oath." Ind.Code § 34–1–14–5. To meet that standard, the child must understand the difference between telling a lie and telling the truth and know that she is under some compulsion to tell the truth. The determination of a child's competency lies within the trial court's discretion because it has the opportunity to observe the child's intelligence, demeanor and maturity. *LeMaster v. State* (1986), Ind., 498 N.E.2d 1185.

In response to questioning from the court and from counsel, both S.W. and A.W. offered clear examples of truth and falsehood, accurately distinguishing between the two concepts. Both girls also clearly indicated that they believed they would be punished if they told a lie. Such was sufficient to support the trial court's determination that they were competent witnesses.

The judgment of the trial court is affirmed.

GIVAN, PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

In determining whether the trial court's ruling preventing appellant's own alibi testimony was consistent with Art. 1, § 13 of the Indiana Constitution, it is appropriate to begin with the text of that constitutional provision, which in pertinent part provides:

"In all criminal prosecutions, the accused shall have the right .. to be heard by himself and counsel ..."

I take it that all would agree that the right guaranteed here is one basic to a fair adjudication of criminal guilt. From the language employed, ".. himself and counsel ..", it is clear that the nature of the right is such that it extends beyond the right to good counsel to the very person of the defendant. *McDowell v. State* (1947), 225 Ind. 495, 76 N.E.2d 249. The very person of the criminal defendant is seldom imbued with an understanding of Constitutions, statutes, or rules of evidence, which confine and restrain the presentation of testimony. It appears therefore to me that this aspect of the provision requires courts to be maximally deferential in favor of permitting one accused of crime to personally choose at trial whether to exercise the right the provision grants.

Art. 1, § 13, also employs the language ".. the right ... to be heard by himself ...". To be heard by me requires that I speak and that the person addressed hear and listen. The right surely includes the privilege of the person accused of crime to speak out in the courtroom, at his trial, and state what in his mind constitutes a predicate for his innocence of the charges. It likewise surely includes the duty of the

trier of fact to hear and listen to such statements. When the accused is prevented by the court from stating his predicates for innocence from the stand, and the jury is aware that it not going to hear what the accused wishes to say, there is a severe adverse impact on the manner in which both the accused and the jury views the fairness of the proceedings, and an adverse impact on the rehabilitative potential of the accused. This is a serious matter indeed when the accused simply wishes to express himself orally under oath in a civil manner, and is restrained.

Based upon the strength of the language considered above, and the unique value which it places upon the desire of an individual when confronted with the reality of his actual trial on criminal charges, to personally speak out and give his version of the story to the court and jury, I conclude, as I did in my concurring opinion in *Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691, that a court inevitably trenches upon the right of the accused to testify, when it applies the exclusionary sanction of the alibi statute so as to prevent the accused from standing empty handed at trial, and personally testifying in oral form that he was not at the scene of the crime but was instead at another place. In this trial situation, I find strong constitutional bias in favor of permitting such personal testimony of the accused. And furthermore, I would assess the interests of the prosecution at stake in this trial situation at about the same level that I would assess the interest of the State in having advance notice that the defendant is going to testify at all on his own behalf so that it could prepare itself to impeach him, which is to say, small potatoes.